## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 24 2020, 10:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John G. Wetherill
Wetherill Law Office
Rockport, Indiana

ATTORNEY FOR APPELLEE

B. Michael Macer
Biesecker Dutkanych & Macer, LLC
Evansville, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Justin Stein,

*Appellant-Respondent,*

*v.*

Heather Stein,

*Appellee-Petitioner.*

January 24, 2020

Court of Appeals Case No.
19A-DC-1306

Appeal from the Spencer Circuit
Court

The Hon. Karen Werner, Special
Judge

Trial Court Cause No.
74C01-1708-DC-423

**Bradford, Chief Judge.**

# Case Summary

Justin Stein ("Husband") and Heather Stein ("Wife") began cohabitating in 2009 and married in 2012. Throughout the marriage, Husband worked for Stein Turkey Farm, LLC ("the LLC"), which operated his family's farm and in which he had a 49% share. Although Wife worked full-time, she contributed significant work to the LLC's turkey and horse businesses. Wife also paid half of the couple's bills and did most of the work to maintain the household, which included Wife's child from a previous relationship and the parties' son ("Child"). In May of 2017, Wife petitioned for dissolution of the marriage. After a final hearing, the trial court awarded all of Husband's interest in the LLC to him and ordered an equal division of the marital estate. Husband contends that the trial court's equal division of the marital estate is contrary to law. Because we disagree, we affirm.

# Facts and Procedural History

Husband was born on April 20, 1987, and Husband and Wife began living together in autumn of 2009 and married on May 5, 2012. Wife worked full-time for approximately $12.00 per hour during the marriage, while Husband averaged $70,999.00 per year in net earnings from 2015 through 2017 working on his family's farm. While married, the parties evenly divided their bills, with Wife paying the water, cable television, electricity, internet, telephone bills and for most of the groceries, cleaning supplies, landscaping, interior upgrades, health insurance for the family, and daycare costs. Wife was also primarily

responsible for maintaining the House and taking care of Child and Wife's child from a previous relationship.

[3] The Steins' farm, which began operations in 1994 and did business during the marriage by the LLC, has turkey, horse, and cattle businesses. Husband owned 49% of the LLC while his father owned the rest. The LLC raises turkeys owned by Perdue until they are ready for processing. Wife would help set up houses for poults, set up feeder rings, and fill feeders and perform other tasks related to the turkey business. At times, Wife would work from eight to ten hours per day on the weekend for the turkey operation. The LLC also operated a horse business, which was primarily run by Wife and sold approximately 200 horses per year. Wife would ride and work with the horses, photograph them for sale, and deal directly with buyers. Even though Wife did most of the work, the proceeds from the horse business were deposited in Husband's segregated account.

[4] On May 5, 2017, Wife petitioned for dissolution of her marriage to Husband, and a final hearing was conducted on February 21 and 28, 2019. By that time, Wife was making more money; in 2018, she made $26,111.00 in adjusted gross income. Tax records admitted at the hearing indicated that Husband was a 49% owner of the LLC, and Gregory Wasson appraised it and testified that it was worth $346,500.00 as of September 13, 2018. On May 10, 2019, the trial court issued its order on, *inter alia*, property division, in which it awarded Husband $218,202.00 and Wife $185,895.85.

# Discussion and Decision

[5] Husband contends that the trial court abused its discretion in dividing the marital estate. Indiana Code section 31-15-7-5 provides as follows:

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
>
>> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>>
>> (2) The extent to which the property was acquired by each spouse:
>>
>>> (A) before the marriage; or
>>>
>>> (B) through inheritance or gift.
>>
>> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
>>
>> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
>>
>> (5) The earnings or earning ability of the parties as related to:
>>
>>> (A) a final division of property; and
>>>
>>> (B) a final determination of the property rights of the parties.

[6] "Subject to the statutory presumption that an equal distribution of marital property is just and reasonable, the disposition of marital assets is committed to the sound discretion of the trial court." *Augspurger v. Hudson*, 802 N.E.2d 503, 512 (Ind. Ct. App. 2004).

An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances, or the reasonable, probable, and actual deductions to be drawn therefrom. An abuse of discretion also occurs when the trial court misinterprets the law or disregards evidence of factors listed in the controlling statute. The presumption that a dissolution court correctly followed the law and made all the proper considerations in crafting its property distribution is one of the strongest presumptions applicable to our consideration on appeal. Thus, we will reverse a property distribution only if there is no rational basis for the award and, although the circumstances may have justified a different property distribution, we may not substitute our judgment for that of the dissolution court.

*Id.* (citations, quotation marks, and brackets omitted).

[7] Finally, because Husband had the burden to establish that an unequal division was warranted, he appeals from a negative judgment.

A judgment entered against a party who bore the burden of proof at trial is a negative judgment. *Garling v. Ind. Dep't of Natural Res.*, 766 N.E.2d 409, 411 (Ind. Ct. App. 2002). On appeal, we will not reverse a negative judgment unless it is contrary to law. *Mominee v. King*, 629 N.E.2d 1280, 1282 (Ind. Ct. App. 1994). To determine whether a judgment is contrary to law, we consider the evidence in the light most favorable to the appellee, together with all the reasonable inferences to be drawn therefrom. *J.W. v. Hendricks Cnty. Office of Family & Children*, 697 N.E.2d 480, 482 (Ind. Ct. App. 1998). A party appealing from a negative judgment must show that the evidence points unerringly to a conclusion different than that reached by the trial court. *Mominee*, 629 N.E.2d at 1282.

*Smith v. Dermatology Assocs. of Fort Wayne, P.C.*, 977 N.E.2d 1, 4 (Ind. Ct. App. 2012).

[8]     While Husband does not dispute the valuation of any component of the marital estate, he contends that the trial court abused its discretion in ordering its equal division.[1]  Specifically, Husband contends that he successfully rebutted the presumption of an equal division in light of his interest in the LLC, which he claims to have received through premarital inheritance or gift.  As mentioned, the presumption of equal division may be rebutted by evidence regarding the extent to which property was acquired through inheritance or gift.  *See* Ind. Code § 31-15-7-5(2)(A), -5(2)(B).

[9]     Husband's entire argument appears to be based on the premise that his 49% stake in the LLC was acquired through a premarital gift or inheritance and that the intent of Husband's family was to keep the LLC and farm intact and pass it to Husband at some point.  As Wife points out, however, Husband identifies no evidence in the record indicating how much—if any—of Husband's interest in the LLC was acquired through inheritance or gift.  Even though Wife testified that it was her understanding that Husband's initial interest in the LLC was a gift from his parents, there is no evidence to establish the nature or amount of that initial interest or when the gift occurred.  As for Husband's family's intent, Husband does not explain, nor is it clear to us, why it should result in an unequal division of the marital estate.  In any event, the trial court awarded all

---

[1]  We would be remiss if we did not point out that while the trial court indicated that it was dividing the marital estate evenly, it, in fact, awarded $32,306.15 more to Husband than to Wife due to her willingness to take only half of the value of the House and a bank account.  That said, Husband frames his argument as though the trial court ordered an equal division, and Wife seems to respond to it on those terms.

of Husband's interest in the LLC to him, so the family farm remains intact and in Husband's family.

[10] Moreover, as Wife points out, even if we assume that Husband's 49% share of the LLC was entirely the result of a premarital gift or inheritance, that is only one factor for the trial court to consider. Contrary to Husband's claim, Wife presented substantial evidence, which the trial court was entitled to credit, that she essentially ran the horse operation while the proceeds went to Husband and also contributed many hours to the LLC's turkey operation. Wife also presented evidence that she paid the bills for water, cable television, electricity, internet, and telephone and for most of the groceries, cleaning supplies, landscaping, interior upgrades, health insurance, and daycare; maintained the House; and did the cooking. Even if we assume that Husband acquired his entire stake in the LLC through gift or inheritance, we cannot say, in light of Wife's contributions to the LLC and the household during the marriage, that the trial court abused its discretion in ordering an equal division of the marital estate.

[11] Husband relies on the decision by another panel of this court in *Dahlin v. Dahlin*, 397 N.E.2d 606 (Ind. Ct. App. 1979), in which we reversed the trial court's near-equal distribution of the marital estate. In *Dahlin*, the trial court awarded $44,000.00 to the husband and $43,000.00 to the wife following the dissolution of their marriage. *Id*. at 608. The husband argued that the near-equal division of the marital estate was an abuse of discretion and pointed to the following uncontested facts:

(1) that [the husband] entered the marriage with a net worth of approximately $65,000; (2) that [the wife] entered the marriage with a net worth of less than $10,000; (3) that virtually all of the parties' financial obligations were paid by [the husband], including a large mortgage and note obligation on the parties' real estate; and (4) that [the wife]'s earnings made a negligible contribution to the parties' finances.

*Id.* We agreed with the husband, concluding that "[t]he short duration of the marriage, the substantial property and financial contributions of [the husband], the extremely limited contribution of [the wife], and the fact of [the husband]'s imminent retirement on a modest pension are all circumstances which militate against the division made below." *Id.*

[12] *Dahlin*, however, is readily distinguished. Here, although the marriage was approximately five years in duration, Husband and Wife lived together for three years prior to their wedding. Moreover, although there is some indication that Husband had more assets than Wife before the marriage, there is no evidence that the disparity was as great as that in *Dahlin*. As mentioned, there is also ample evidence that Wife made significant financial and other contributions to the running of the parties' household during the marriage and contributed significant labor to the LLC. Finally, Husband is now thirty-two years old, not facing the imminent prospect of retirement on a small, fixed income, as was the husband in *Dahlin*. Due to the many differences between the two cases, our decision in *Dahlin* does not require reversal in this case.

[13] The judgment of the trial court is affirmed.

Robb, J., and Altice, J., concur.